PEARL SISKIND, Appellant, v EDWARD NORRIS, Defendant, and FEINSTEIN IRON WORKS, INC., Respondent.

First Department, November 30, 1989

## APPEARANCES OF COUNSEL

*Sally Weinraub, P. C.,* and *Subin Associates, P. C.,* for appellant.

*David Holmes* of counsel *(Sheft & Sweeney,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

On June 13, 1985, Bernard Siskind was involved in a motor

vehicle accident, as a result of which he commenced an action against Edward Norris and Feinstein Iron Works, Inc., alleging personal injuries, including a herniated disc, and seeking $2,000,000 in damages. Siskind's wife, Pearl, was not named as a party in that action and no claim was made in her behalf.

On June 16, 1988, three days beyond the expiration of the Statute of Limitations, and after the parties had been directed to proceed to trial, Siskind's action was eventually settled for $500,000. In the course of the settlement negotiations, Siskind's attorney had inquired as to whether Feinstein's excess insurer would be willing to contribute $100,000 to the $500,000, which was being paid by Feinstein's primary insurer. When the excess insurer refused, Siskind agreed to accept the $500,000, although, according to his attorney, he was dissatisfied with the settlement. A release was executed and stipulation of discontinuance prepared that same day. Siskind's attorney pressed for immediate payment of the settlement sum.

Thereafter, Feinstein's primary insurer issued its settlement draft, which was paid sometime before July 1, 1988. On that date, Pearl Siskind, represented by the same attorney as had represented her husband, commenced this action seeking the recovery of $1,000,000 for loss of consortium by service of a summons and complaint on Norris and Feinstein. At no time during the settlement negotiations of Bernard Siskind's action did he or his attorney refer to any contemplated action by Pearl Siskind arising out of the accident of June 13, 1985. The complaint in this action was verified June 6, 1988, seven days before the Statute of Limitations was to run and 10 days before Bernard Siskind's action was settled. Apparently, a copy of the summons had been filed with the County Clerk of Queens County to toll the Statute of Limitations.

Prior to answering, Feinstein moved, pursuant to CPLR 3211 (a) (5), to dismiss the complaint on the ground of release and payment. The motion court granted the motion, not on that ground, which it rejected, but, rather, on the constraint of precedent, which, it held, required mandatory joinder of derivative claims. We reverse.

In 1968, in *Millington v Southeastern Elevator Co.* (22 NY2d 498), the Court of Appeals, abandoning the old rule that only the husband had a cause of action for loss of spousal consortium, recognized, for the first time in New York, a wife's right to maintain such a cause of action. Stating that consortium

"represents the interest of the injured party's spouse in the continuance of a healthy and happy marital life" *(supra,* at 504-505), the court held that the wife's interest in the undisturbed continuance of that relationship is no less worthy of protection than that of her husband. Consortium was held to include not only support or services, but also "such elements as love, companionship, affection, society, sexual relations, solace and more." *(Supra,* at 502.)

Courts in other States have voiced the same rationale. *(See, e.g., Schreiner v Fruit,* 519 P2d 462 [Alaska] [injury to the conjugal relationship rather than loss of services is basis for cause of action]; *Nicholson v Chatham Mem. Hosp.,* 300 NC 295, 266 SE2d 818 [essence is the mutual rights of husbands and wives]; *Thill v Modern Erecting Co.,* 284 Minn 508, 170 NW2d 865 [marital relationship is a "wholeness"]; *Izzo v Colonial Penn Ins. Co.,* 203 Conn 305, 524 A2d 641 [loss of consortium inextricably attached to the claim of the injured spouse].) In *DeAngelis v Lutheran Med. Center* (84 AD2d 17, *affd* 58 NY2d 1053), the Second Department, by rejecting the plaintiff's effort to equate the relationship between parents and children with that which exists between spouses, reaffirmed the unique status accorded the marital relationship.

While an action for loss of consortium is viewed as derivative of the original cause of action of the injured spouse, it has been held to be a separate and independent cause of action, constituting a property right of the deprived spouse. "Since the husband's cause of action is separate and distinct from that of his wife for personal injuries * * * he could have brought his action even though no suit had been brought by his wife". *(Rios v State of New York,* 67 AD2d 744; *see also, Filer v New York Cent. R. R. Co.,* 49 NY 47, 56.) Under this view, a loss of consortium action is derivative only to the extent that it is not cognizable unless the defendant is liable to the injured spouse, whose injury in turn caused the spouse to suffer. In all other respects it constitutes a separate and distinct cause of action personal to the deprived spouse.

Thus, a release given by the injured spouse, whether executed prior to the injury in the form of an exculpatory agreement releasing a party from liability for future injuries or after, cannot be binding on the deprived spouse, since, by virtue of the marital relationship, the injured party is not the agent of his or her spouse and thus, cannot bind the other by an agreement to which he or she is not a party. Courts in other jurisdictions have similarly held. *(Fleischman v Har-*

*wood,* 10 FRD 139 [SD NY]; *see, Gallina v State of New York,* 115 AD2d 251; *Nealy v Fluor Drilling Serv.,* 524 F Supp 789 [WD La], *affd* 701 F2d 441; *Barker v Colorado Region Sports Car Club,* 35 Colo App 73, 532 P2d 372; *Ryter v Brennan,* 291 So 2d 55 [Fla], *cert denied* 297 So 2d 836; *Deese v Parks,* 157 Ga App 116, 276 SE2d 269; *Rosander v Copco Steel & Eng'g Co.,* 429 NE2d 990 [Ind]; *Gillespie v Papale,* 541 F Supp 1042 [applying Mass law]; *Shepherd v Consumers Coop. Assn.,* 384 SW2d 635 [Mo]; *Whittlesey v Miller,* 572 SW2d 665 [Tex]; *Arnold v Shawano County Agric. Socy.,* 106 Wis 2d 464, 317 NW2d 161, *affd* 111 Wis 2d 203, 330 NW2d 773; *but see, Beardslee v Michigan Claim Servs.,* 103 Mich App 480, 302 NW2d 896 [representing the minority view that the loss of consortium action is purely derivative, where the court held that a wife's consortium claim for her husband's original injury was extinguished by his release, although her claim for loss of consortium, based upon the husband's claim of fraud as a result of his employers' workers' compensation carrier's inducing him to return to work, causing an aggravation of his original injury, was not similarly barred]; *see also,* Annotation, 29 ALR4th 1200.)

Nor, as the motion court held, is there any requirement that the loss of consortium claim of one spouse be joined with the underlying claim of the injured spouse. *Millington,* in speaking of the concern over duplicative damage awards in the event a wife's action for loss of consortium was recognized, itself acknowledged that joinder was not mandated when it stated, "Since * * * it is rare, if not unknown, to try a husband's consortium action separately from his wife's negligence action, the fear of duplicative damages is wholly unsupportable. Furthermore, if any plaintiff should attempt to exploit the possibility of double recovery by bringing separate actions, motions to consolidate would quickly resolve that difficulty." *(Supra,* 22 NY2d, at 502.) It should also be noted that prior to *Millington,* which did not, in any way, restrict the husband's loss of consortium action, but, rather, merely eliminated "an unjust discrimination" that had existed against wives (22 NY2d, at 509), a husband was permitted to bring his own action for loss of consortium subsequent to the termination of his wife's personal injury action. *(See, Neeson v City of Troy,* 29 Hun 173.)

In reaching the conclusion that precedent required the mandatory joinder of derivative claims, the motion court cited *Young v St. Joseph's Hosp.* (51 AD2d 869). There, the court, in

rejecting an infant's derivative claim arising out of her mother's negligently caused injuries, held that even if it were to recognize an infant's derivative action, "such actions must be joined with the main action for personal injuries". *(Supra,* at 870.) In so ruling, the Fourth Department cited *Millington,* incorrectly in our view. In *Millington,* the Court of Appeals, in speaking of the practical problems, especially with respect to retrospective application, in allowing a wife's loss of consortium action, noted that if a husband's personal injury action were pending, "the wife's consortium action, if not time-barred, should be joined with her husband's claim." *(Supra,* 22 NY2d, at 508.) In cases where the husband's claim had been resolved by judgment or settlement, the court held, the wife's cause of action for consortium should be barred. Thus, in speaking of joinder, the court's only concern was with limiting the retroactive application of the new cause of action to those instances where the husband's underlying claim was still pending on the effective date of its decision. Other courts have so construed *Millington.* (See, e.g., *Swartz v United States Steel Corp.,* 293 Ala 439, 304 So 2d 881, 886; *Rodriguez v Bethlehem Steel Corp.,* 12 Cal 3d 382, 525 P2d 669, 685, n 26; *Diaz v Lilly & Co.,* 364 Mass 153, 302 NE2d 555, 564.) Since *Millington,* neither the Court of Appeals nor this court has ruled on the issue of mandatory joinder of a loss of consortium action. We, therefore, may still look to *Neeson v City of Troy* (29 Hun 173, *supra),* which sanctioned a husband's subsequently brought loss of consortium action, as controlling.

The courts of other jurisdictions are divided as to whether derivative actions are subject to mandatory or permissive joinder. *Rodriguez v Bethlehem Steel Corp.* (12 Cal 3d 382, 525 P2d 669, *supra)* favors permissive joinder. " 'Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries.' " *(Supra,* 12 Cal 3d, at 407, 525 P2d, at 685; *see also, Diaz v Lilly & Co.,* 364 Mass 153, 302 NE2d 555, *supra.)* In *Reid v Spadone Mach. Co.* (119 NH 198, 400 A2d 54), the wife commenced a separate action for loss of consortium after entry of judgment by the husband. The court held that while the wife should have joined in the husband's action for purposes of judicial administration, her failure to do so would not

justify dismissal of her action. *(See also, Arnold v Shawano County Agric. Socy.,* 106 Wis 2d 464, 317 NW2d 161, *supra.)*

In *Palmer v Clarksdale Hosp.* (213 Miss 611, 57 So 2d 476), the court ruled that a loss of consortium action could not be joined with a spouse's personal injury since it constituted an independent cause of action. On the other hand, in Missouri, a defendant may give a deprived spouse 30 days' notice of the pendency of the injured spouse's personal injury action and of the necessity to join therein. Failure to do so will bar the loss of services action. *(Garland v American Family Mut. Ins. Co.,* 458 SW2d 889 [Mo].) Where, however, the defendant did not serve the notice of pendency of the husband's action on the wife, the wife's separate suit was not barred. *(Cline v Carthage Crushed Limestone Co.,* 504 SW2d 118 [Mo].)

The courts of other jurisdictions similarly encourage, but do not require, joinder of the loss of consortium claim of one spouse with the bodily injury claim of the other. *(See, e.g., Barni v Kutner,* 45 Del 550, 76 A2d 801; *Huffer v Kozitza,* 361 NW2d 451, 454 [Minn], *affd* 375 NW2d 480; *Ryter v Brennan,* 291 So 2d 55 [Fla], *cert denied* 297 So 2d 836; *Stapleton v Palmore,* 250 Ga 259, 297 SE2d 270; *Kotsiris v Ling,* 451 SW2d 411 [Ky]; *Whittlesey v Miller,* 572 SW2d 665, *supra; Layne v Huffman,* 42 Ohio St 2d 287, 327 NE2d 767.)

Courts in other jurisdictions, however, hold that the loss of consortium claim of one spouse must be joined with the personal injury claim of the other spouse. *(See, e.g., Schreiner v Fruit,* 519 P2d 462, *supra; Hopson v St. Mary's Hosp.,* 176 Conn 485, 408 A2d 260; *Brown v Metzger,* 104 Ill 2d 30, 470 NE2d 302; *Rosander v Copco Steel & Eng'g Co.,* 429 NE2d 990, *supra; Madison v Colby,* 348 NW2d 202 [Iowa]; *Deems v Western Md. Ry. Co.,* 247 Md 95, 231 A2d 514; *Oldani v Lieberman,* 144 Mich App 642, 375 NW2d 778; *Thill v Modern Erecting Co.,* 284 Minn 508, 170 NW2d 865, *supra; Huffer v Kozitza,* 361 NW2d 451, *supra; General Elec. Co. v Bush,* 88 Nev 360, 498 P2d 366; *Ekalo v Constructive Serv. Corp.,* 46 NJ 82, 215 A2d 1; *Richardson v Kulick,* 213 NJ Super 250, 517 A2d 149; *Nunamaker v New Alexandria Bus Co.,* 371 Pa 28, 88 A2d 697; *Wilson v Hasvold,* 86 SD 286, 194 NW2d 251; *see also, Hay v Medical Center Hosp.,* 145 Vt 533, 496 A2d 939; *Ueland v Reynolds Metals Co.,* 103 Wash 2d 131, 691 P2d 190; *see also,* Restatement [Second] of Torts § 693 [2] [1977]; Annotation, 60 ALR4th 1174.)

Since plaintiff's loss of consortium action is separate and

distinct from her husband's personal injury action and not subject to mandatory joinder, his release and acceptance of $500,000 in settlement of his action does not constitute a bar to this action. Although we recognize that our disposition has the potential to facilitate the recovery of duplicative awards and unnecessarily impose additional burdens on valuable judicial time and resources, any other determination would not be in keeping with precedent. In passing, we note that defendants had it within their power to avoid this result by conditioning any settlement of the husband's claim upon tender of an appropriate release from his wife. Nor should defendants have relied on the apparent running of the Statute of Limitations. CPLR 203 (b) (5), which provides for delivery of the summons to the Sheriff or County Clerk as a tolling device, was drafted so as to afford a defendant a reasonable means of ascertaining whether the tolling provision is being utilized in any particular case. Of course, nothing prevented plaintiff's attorney from being more forthright in the settlement negotiations, especially since his adversary, in apparent reliance on the perceived running of the Statute of Limitations, was concluding a settlement which, he believed, would dispose of the case in its entirety and for which he was expending the limit of his client's primary insurance coverage. That circumstance, however, no matter how disdainfully we view it, does not affect plaintiff's right to maintain this action.

Accordingly, the order of the Supreme Court, New York County (Burton S. Sherman, J.), entered January 13, 1989, granting defendant Feinstein Iron Works, Inc.'s motion to dismiss the complaint, should be reversed, on the law, without costs or disbursements, and the motion denied.

CARRO, ASCH, ROSENBERGER and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on January 13, 1989, unanimously reversed, on the law, without costs and without disbursements, and the motion to dismiss the complaint denied.